IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03362-MEH

MICHELE BROWN,

    Plaintiff,

v.

COLORADO JUDICIAL DEPARTMENT,

    Defendant.

# ORDER

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Plaintiff's Motion for Leave to Amend Complaint. ECF 86. Plaintiff seeks leave of court to amend her complaint to add Andrew Maikovich ("Maikovich") as a co-plaintiff. The Motion is fully briefed, and the Court finds that oral argument would not materially assist in its adjudication. For the reasons that follow, the Motion is denied in part and granted in part.

## BACKGROUND

**I.    Statement of Facts**

    The Court draws the following fact allegations from the proposed First Amended Complaint ("FAC") (ECF 86-1) that Plaintiff seeks leave to file. Because the allegations remain substantially the same as in the original complaint, the Court does not repeat them here in the same detail that it did in the Statement of Facts to its Order (ECF 47) on Defendant's Motion to Dismiss. Instead, the Court summarizes the general fact background, incorporating by reference the prior Statement of Facts, and highlights the new averments that concern the Motion. For purposes of

this ruling, the Court accepts as true the factual allegations—but not any legal conclusions, bare assertions, or conclusory allegations—that Plaintiff raises in her FAC. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (accepting as true a plaintiff's factual allegations for purposes of Fed. R. Civ. P. 12(b)(6) analysis).

Plaintiff is a sixty-four-year-old African American who is employed by the Colorado General Assembly, where she has worked in the legislative legal services office for twenty-seven years. Her husband, Maikovich, is employed by the Office of the State Court Administrator ("SCAO") as an education specialist, where he has worked for ten years. SCAO provides administrative support and services to the Colorado state court system, including the Colorado Supreme Court. Although Plaintiff and her husband work for different agencies, the Colorado Judicial Department is the Defendant for both of their claims for relief.

On May 2, 2018, Plaintiff applied for a Rules Attorney position posted by the Colorado Supreme Court. She had three years of experience working with the rules of the Colorado Supreme Court, which included close interaction with former Supreme Court Rules Attorney Jenny Moore. She was one of ten applicants to receive an interview for the Rules Attorney position.

The hiring panel for the Rules Attorney position consisted of six individuals: (1) the Honorable Richard Gabriel, Supreme Court Justice; (2) the Honorable Melissa Hart, Supreme Court Justice; (3) Cheryl Stevens, Clerk of the Court; (4) Melissa Meirink, Staff Attorney; (5) Jennifer Wallace, Staff Attorney; and (6) Jeremy Beck, Staff Attorney. Justice Gabriel led the hiring committee as the "panel chair." The panel interviewed Plaintiff on May 23, 2018.

On May 23 or May 24, 2018, the Colorado Supreme Court selected another applicant for the position. The person it hired, Kathryn Michaels, is Caucasian and thirty-three years old. Plaintiff alleges that Michaels, who was a law librarian, lacked work experience directly related to

the Rules Attorney position. On May 31, 2018, Maikovich met with Christopher Ryan (then State Court Administrator) and Mindy Macias (then Deputy State Court Administrator) at SCAO. Maikovich expressed his opinion that his wife was more qualified that Michaels, and he stated that Plaintiff was considering filing a charge with the EEOC.

Defendant provides dispute resolution options for resolving employment-related grievances and encourages an informal approach. ECF 86-1 at ¶¶ 47-48. At the May 31, 2018, meeting, Maikovich declined the option of filing an internal complaint with SCAO's Human Resources Department ("HR"). However, he did raise the possibility of the Colorado Supreme Court apologizing to Plaintiff and committing itself "to use the hiring policies adopted and required to be used by every other division of the judicial branch in the state of Colorado." *Id*. at ¶ 55. Maikovich spoke with Macias again on June 4, 2018. On June 6, 2018, Macias emailed him, explaining that before her office could consider any action on this matter, they "need a finding of fact from [Plaintiff] and the staff involved in the recruitment process." *Id*. at ¶ 64. That would require an investigation which HR would have to conduct, and to open an investigation, HR would need to hear from Plaintiff directly. Macias suggested that Plaintiff contact Eric Brown, Defendant's Chief Human Resources Director. Maikovich had no more direct contact with Defendant's administrative office staff.

Maikovich alleges that SCAO did not inform the Colorado Commission on Judicial Discipline of his complaint about Plaintiff's non-hire, as Judicial Branch Complaint Procedure 5 required. Somehow, HR still learned about the matter. On August 28, 2018, Dawn Palutke, SCAO's then Senior Human Resources Manager, emailed Meirink to report that HR "has received a complaint from a member of the public regarding a recent Judicial hiring process." ECF 86-1 at ¶ 78. The subject of that investigation, as Palukte explained in a letter to Plaintiff dated August 28,

3

2018, was her rejection for the Rules Attorney position. *Id*. at ¶ 73. Plaintiff denies prompting that investigation. In her Motion for Leave to Amend, she contends that "the investigation was conducted entirely on the basis of the single informal meeting on May 31, 2018, between [Maikovich, Macias, and Ryan]." ECF 86 at 6, n.3.

For purposes of that investigation, Palutke asked Plaintiff to attend an interview with Eric Brown and Paul Buckley, an outside consultant and investigator. Palutke informed Maikovich that he also would be interviewed about the matter because he "may have pertinent information that could assist" in the investigation.

In the email to Maikovich, Palutke added the requirement that he "fully cooperate with the investigation/inquiry by being candid and honest, thorough and disclosing any relevant knowledge or evidence" in compliance with the Colorado Judicial Department Code of Conduct. Palutke concluded the email by advising that the information he provides "will be kept as confidential as possible and shared only on a 'need to know' basis." ECF 86-1 at ¶ 74.

On September 3, 2018, Maikovich told Macias that neither he nor Plaintiff wanted SCAO investigating the matter, preferring that it be left to EEOC. Maikovich added that while "you can push me around because I work here," Plaintiff "will not participate." *Id*. at ¶ 79. Eric Brown informed Buckley that Plaintiff would "be a no show and is our complainant." *Id*. at ¶ 80. Although Plaintiff did not participate, her husband did. Buckley asked him questions about Plaintiff and her experience with the job interview. Maikovich alleges that at its conclusion, he asked Buckley and Eric Brown, "why are we here? You know you are not going to tell the Supreme Court that it violated state or federal civil rights laws. What is the purpose of this investigation?" Eric Brown answered, "factfinding." *Id*. at ¶ 84.

4

At his interview, the first question Buckley asked Maikovich was if he had training about "whether a question is legally proper during an interview." *Id*. at ¶ 83(a). On September 7, 2018, Maikovich later supplemented his answer to that question by providing "the section [Plaintiff] and I wrote about interviewing in our employment discrimination book." *Id*. at ¶ 89.

On September 7, 2018, Eric Brown sent an email to both Chief Justice Coats and Chief Counsel Andrew Rottman. Addressing Rottman, Eric Brown advised that "this is being taken very seriously," certain others are now informed about it, and to give "an idea of where this is going." Eric Brown added that he "didn't want to create a paper trail for the Chief, so [he trusted Rottman to] know the best way to keep [Chief Justice Coats] informed." *Id*. at ¶ 90.

Plaintiff filed a charge of discrimination with EEOC on September 17, 2018. She claimed discrimination "based on race (Title VII) and age (ADEA)." *Id*. at ¶ 93.

On October 8, 2018, Buckley told Eric Brown that "the individuals involved in the selection process of the staff attorney position failed to rely on the policies and tools available through the Human Resources Division." *Id*. at ¶ 94.

On March 1, 2019, Maikovich filed a charge of discrimination with the Colorado Civil Rights Division ("CCRD") against Defendant "alleging harassment and/or discriminatory terms and conditions of employment based on retaliation for engaging in protected activity." *Id*. at ¶ 99. In its response to the charge, Defendant explained that it had interviewed Maikovich because he was the complaining party. Defendant also denied retaliating against him.

Maikovich denies being a "complainant." Plaintiff likewise denies filing a complaint with HR or requesting the investigation that it commenced on August 28, 2018. Nevertheless, they argue that if Defendant regarded them as complainants, Defendant should have given them Anti-

Harassment and Anti-Discrimination Policy protections.[1] If Maikovich indeed had complained of discrimination, then he had "the right to a fair and complete investigation, appropriate action being taken, and to be free from retaliation." *Id*. at ¶ 139.

At the initial May 31, 2018 meeting, Maikovich had given Ryan and Macias a written request for the Colorado Supreme Court to retain records related to the Rules Attorney hiring process for potential litigation use. *Id*. at ¶ 57. On April 17, 2019, he sent a records request signed by Plaintiff to SCAO for documents related to the EEOC and CCRD charges, the panelists' notes from Plaintiff's interview, and the notes taken during the investigatory interviews that HR conducted later. *Id*. at ¶¶ 102, 112, 114.

On April 30, 2019, Maikovich complained to Chief Justice Coats about SCAO's late response to his records request and SCAO's allegedly false explanation for the delay. *Id*. at ¶ 122. He raised the subject again on May 3, 2019. *Id*. at ¶¶ 127-128.

In July 2019, the Colorado Supreme Court terminated its contract with Macias. *Id*. at ¶ 162. That same month, Eric Brown resigned. *Id*. at ¶ 170. In August 2019, Palutke was placed on leave. *Id*. at ¶ 180.

On August 9, 2019, EEOC issued Plaintiff a Right to Sue Letter. *Id*. at ¶ 177. Also that month, SCAO declined CCRD's invitation to mediate Maikovich's charge. *Id*. at ¶ 176. On October 28, 2019, CCRD issued Maikovich a Right to Sue Letter for his charge of disparate treatment and retaliation. *Id*. at ¶ 182.

---

[1] For example, Chief Justice Directive 08-06: Anti-Harassment and Anti-Discrimination Policy provides that "[a]ll complaints of harassment and discrimination as well as the outcome and findings resulting from any investigation thereof are to be held confidential in accordance with the Colorado Supreme Court Rule, Chapter 38, Rule 2 Public Access to Administrative Records." *Id*. at ¶ 138.

**II.     Procedural History**

Plaintiff and Maikovich sued Defendant for various employment law violations. The initial complaint's First Claim for Relief was Plaintiff's failure-to-hire claim which she brought under Colo. Rev. Stat. § 24-34-402 ("CADA"), 42 U.S.C. §§ 2000e-2 and 2000e-3 ("Title VII"), and 29 U.S.C. § 623 ("ADEA"). For the Second Claim for Relief, Maikovich raised the same statutory violations with respect to him. He added Defendant's breach of its Anti-Harassment and Anti-Discrimination Policy as the Fourth Claim for Relief. Plaintiff and Maikovich jointly brought the Third Claim for Relief alleging that Defendant's interview of Maikovich violated their marital privacy and spousal privilege.

Defendants moved to dismiss claims two through four. ECF 13. Finding no basis for those counts to proceed, the Court granted the motion in full and dismissed them. ECF 47. Plaintiff's First Claim for Relief was subject of a later partial dismissal order in which the Court dismissed her ADEA age discrimination claim on immunity grounds. ECF 87. As a result of those two dismissal orders, the only claims for relief that remain for further litigation are Plaintiff's allegations of (1) race discrimination in hiring in violation of Title VII and CADA and (2) age discrimination in hiring in violation of CADA.

The first dismissal order (ECF 47) was issued on June 2, 2020. Discovery commenced soon thereafter. However, given COVID-related difficulties to conducting in-person depositions, the Court administratively closed the case on September 14, 2020 for the purpose of staying discovery. ECF 61. The stay of discovery was lifted on March 17, 2021. ECF 75. During the intervening time before Plaintiff filed the instant Motion for Leave to Amend on May 18, 2021 (ECF 86), the Court had held several status and discovery conferences.

7

In her Motion, Plaintiff asks to re-add Maikovich as a co-plaintiff and to allow him to re-assert the Second through Fourth Claims for Relief. She seeks the amendment well after the April 1, 2020 presumptive deadline for joinder of parties and amendment of pleadings that the Scheduling Order had set. ECF 35.

## LEGAL STANDARDS

### I. Fed. R. Civ. P. 16(b)

Under Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). If a party is seeking to modify after a scheduling order deadline, then the "party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015) (quoting *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)).

Rule 16(b)'s "good cause" standard "does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order. Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000) (quoting *Dilmar Oil Co., v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997)). "Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery." *Gorsuch*, 771 F.3d at 1240. However, "[a] litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend." *Perez v. Denver Fire Dep't.*, 243 F. Supp. 3d 1186, 1200 (D. Colo. 2017). "To demonstrate good cause pursuant to Rule 16, the moving party must . . . 'provide an adequate explanation for any delay.'" *Lehman Bros. Holdings Inc. v. Universal Am.*

8

*Mortg. Co., LLC*, 300 F.R.D. 678, 681 (D. Colo. 2014) (quoting *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009)).

## II. Fed. R. Civ. P. 15(a)

Rule 15 states that if the deadline for amending a pleading has passed, then "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "The grant or denial of an opportunity to amend is within the discretion of the Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Maloney v. City of Pueblo*, 323 F.R.D. 358, 360 (D. Colo. 2018) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Id.* (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

Prejudice in this context arises when the amendment unfairly affects the opposing party "'in terms of preparing their defense to the amendment.'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006) (quoting *Patton v. Gayer*, 443 F.2d 79, 86 (10th Cir. 1971)). Prejudice occurs "when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id*. Moreover, "[i]f a party opposes a motion to amend or to supplement on the grounds of futility, the court applies the same standard to its determination of the motion that governs a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Conkleton v. Zavaras*, No. 08–cv–02612–WYD–MEH, 2010 WL 6089079, at *3 (D. Colo. Oct. 6, 2010), recommendation adopted by 2011 WL 839282 (D. Colo. Mar. 7, 2011).

**DISCUSSION**

**I.     Undue Delay**

In the Tenth Circuit, untimeliness alone may be a sufficient basis to deny a party leave to amend. *Duncan v. Manager, Dep't of Safety,* 397 F.3d 1300, 1315 (10th Cir.2005); *Hayes v. Whitman*, 264 F.3d 1017, 1026 (10th Cir. 2001). The important inquiry is not simply whether a delay occurred, but whether it was undue. *Minter*, 451 F.3d at 1206. Delay is undue "when the party filing the motion has no adequate explanation for the delay," *Frank,* 3 F.3d at 1365-66, or when "the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint," *Las Vegas Ice & Cold Storage Co. v. Far West Bank,* 893 F.2d 1182, 1185 (10th Cir. 1990) (quoting *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984)).

Plaintiff seeks the amendment about a year after the Scheduling Order's deadline for joining parties or amending pleadings, but she filed her Motion relatively soon after the discovery stay was lifted and the case reopened. In that regard, the Court does not find the Motion untimely. However, there was no new development to explain why Plaintiff is making her request at this time. She identifies no new fact (or legal argument) for making the amendment. In substance, her request is more for reconsideration of the prior dismissal order than to amend her complaint in response to a substantive change in the case.

**II.    New Evidence**

Plaintiff incorporates into the FAC allegations based on evidence learned during the course of discovery. Of this newly learned evidence, she stresses the letter of October 8, 2018 to Eric Brown in which Buckley opines that "the individuals involved in the selection process of the staff attorney position failed to rely on the policies and tools available through the Human Resources

10

Division." ECF 86 at 4, 17. However, that letter—like almost all of the new information added to the FAC—more directly concerns Plaintiff's failure-to-hire claim. None of it shows how Maikovich has his own actionable claims for redress.

## III.     Prejudice

Allowing Maikovich to re-assert his claims for relief would not prejudice Defendant in the sense of requiring it to defend against an entirely new issue at a late stage in the litigation. Re-adding his claims for relief would not change the fundamental nature of the litigation. Instead, futility is Defendant's stronger argument in opposition to the Motion.

## IV.     Futility

A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason. *Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001); *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008). Thus, if dismissal still is warranted even with the changes, the amended complaint is futile. *Hawkinson v. Montoya,* 385 F. App'x 836, 840 (10th Cir.2010); *Jefferson Cty. Sch. Dist. v. Moody's Investor's Servs., Inc*. 175 F.3d 848, 859 (10th Cir. 1999); *Johnson v. Reyna*, No. 20-CV-00459-PAB-MEH, 2021 WL 849770, at *3 (D. Colo. Jan. 25, 2021) (denying the motion to amend because the plaintiff's additional allegations do not cure the prior deficiencies). Defendant argues that because none of the new allegations in Plaintiff's proposed FAC cure the claims' pleading deficiencies, the Court should deny the Motion on futility grounds.

### A.     Breach of Contract/Promissory Estoppel

Plaintiff seeks to revive the same Fourth Claim for Relief as Maikovich originally had worded and framed it. Maikovich alleges that Defendant violated his contractual rights as an employee by not following "the rules afforded to employees within the Judicial Branch." ECF 2

11

at ¶ 184; ECF 86-1 at ¶ 202. In neither version of this claim does Maikovich identify a specific document at issue, although Plaintiff references the Defendant's Anti-Harassment and Discrimination Policy ("Policy") in her present legal arguments.

Construing the claim broadly, its viability turns on whether the Policy could be considered an enforceable contract between Maikovich and Defendant. Maikovich has been aware from the beginning of the need to establish how an employer handbook could be considered a contract. In the initial complaint, he based the Fourth Claim for Relief on the assertion that "when a court recognizes the contractual enforceability of a regulation or handbook, all of the policies contained therein are binding upon the parties." ECF 2 at ¶ 183. The new version of the claim adds nothing to buttress the point. In her Reply (ECF 97), Plaintiff provides legal argument to support Maikovich's ability to bring a breach of contract claim based on the Policy. However, because she raises that argument in her Reply, she deprives Defendant the opportunity to respond in opposition. Moreover, Plaintiff does not explain how leave to amend may be based on re-litigation of an already decided issue. Her current Reply relies on three cases, *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460 (10th Cir. 1994), *Trujillo v. Atmos Energy Corp.*, 896 F. Supp. 2d 949 (D. Colo. 2012), and *Pascouau v. Martin Marietta Corp.*, 994 F. Supp. 1276 (D. Colo. 1998), that the Court discussed in its prior dismissal order.

Even after reconsidering the issue on its merits, Plaintiff's present argument in support of the Fourth Claim for Relief still does not overcome the defects that warranted its previous dismissal. A discussion of *Fejes v. Gilpin Ventures, Inc*., 960 F.Supp. 1487 (D. Colo. 1997), which is a new case that Plaintiff cites in her current Reply, illustrates how the proposed contract claim fails as a matter of law. The alleged promise must consist of something more than a vague assurance, *id*. at 1496, and a generalized statement not to violate employment laws is such an

12

impermissible indefinite assurance, ECF 47 at 23. The *Fejes* court reached the same conclusion with respect to the EEOC statement at issue before it. *Fejes*, 960 F.Supp. at 1496. By contrast, the *Fejes* court found the handbook's guidelines on the subject of pregnancy to be sufficiently specific to send the question of whether they created a contract to the factfinder. *Id.* at 1497.

Plaintiff argues that the Policy is "significantly more detailed than the [handbook provisions at issue in *Fejes* and as such, the Policy's provisions] require discovery and potentially a factual inquiry by a jury." ECF 97 at 6. Even after assuming that the Policy statement is indeed part of Maikovich's employee handbook, Plaintiff does not take the next step and identify what provisions he bases his breach of contract claim upon. In the proposed FAC's Factual Background section, Plaintiff alleges that Maikovich had "the right to a fair and complete investigation, appropriate action being taken, and to be free from retaliation," *id.* at ¶ 139, but those are the kind of vague promises or general statements of law that do not support a contract claim.

The only specific provision the FAC references is that "all complaints of harassment and discrimination as well as the outcome and findings resulting from any investigation thereof are to be held confidential in accordance with the Colorado Supreme Court Rule, Chapter 38, Rule 2 Public Access to Administrative Records." *Id.* at ¶ 138 (quoting from Chief Justice Directive 08-06 of the Policy). In her Reply, Plaintiff complains about a lack of confidentiality, but for that argument, she refers to Palutke's email to Maikovich on August 28, 2018 as the relevant confidentiality requirement and not to Chief Justice Directive 08-06 of the Policy. In her email, Palutke advised Maikovich that the information he provides "will be kept as confidential as possible and shared only on a 'need to know' basis." ECF 86-1 at ¶ 74. Moreover, Plaintiff does not explain how Defendant actually breached a confidentiality provision whether from the Policy or Palutke's email. As evidence of a confidentiality breach, Plaintiff refers only to the email from

13

Eric Brown (the HR director) to Chief Justice Coast and Chief Counsel Rottman, but she leaves unclear why a communication between department heads about the status of an important internal investigation would be impermissible.

To be plausible, the Fourth Claim of Relief also requires Maikovich to plead that he acted in reasonable reliance on the Policy, but because he denies being a complainant, he does not establish how the Policy even applied to him in the first place (ECF 47 at 25). In her Reply, Plaintiff concedes that the allegations she raises in her proposed FAC "could lead a person to conclude that [Maikovich] . . . was not considered to be a 'complainant,'" but she discounts them as "merely statements of fact" and a matter on which Maikovich has not yet taken a definite position. ECF 97 at 7-8. She also characterizes the issue of whether Maikovich was a complainant as an open question of fact to be developed in discovery and for the factfinder to resolve. *Id*. Either way, whether as a direct denial of complainant status or as a denial to take a position on it, Plaintiff does not plead a basis by which Maikovich could assert reasonable reliance.

Plaintiff does not demonstrate how Maikovich's renewed contract-based claim is plausibly pleaded and would survive Rule 12(b)(6) review. It would be futile to allow him to reassert it again as his Fourth Claim for Relief.

### B.     Violation of Employment Law Statutes

For the Second Claim for Relief, Maikovich alleges that Defendant retaliated against him in violation of CADA, Title VII, and ADEA after he had reported his wife's concerns about the Colorado Supreme Court's hiring practices. ECF 47 at 17, n.4. The Court dismissed the claim because Maikovich pleaded no adverse employment action either in the form of interviewing him for the internal investigation or referring to him as "complainant" in the later CCRD proceeding. The Court found the legal analysis to apply equally to both the alleged violations of the Title VII

14

and ADEA statutes and Colorado's Anti-Discrimination Act. In support thereof, the Court cited *Agassounon v. Jeppesen Sanderson, Inc.*, 688 F. App'x 507, 509 (10th Cir. 2017) which explained that "CADA discrimination and retaliation claims are subject to the same legal standards as Title VII claims," and "because they rise or fall together, . . . we analyze the corresponding statutory claims together"). The Court likewise cited *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1219, n.11 (10th Cir. 2010) upon which *Agassounon* relied. Plaintiff cites no case law that instructs *not* to interpret CADA consistently with Title VII and ADEA as parallel statutes.

Plaintiff seeks leave to reassert the CADA violation that was part of Maikovich's Second Claim for Relief, arguing that CADA provides protection that is *broader* than Title VII and ADEA, and thus, case law that interprets those federal statutes do not necessarily apply to CADA. In support thereof, Plaintiff cites the CADA statute itself which begins, "It shall be a discriminatory or unfair employment practice:" before listing the specific unlawful practices. Colo. Rev. Stat. § 24-34-402(1). Plaintiff bases her argument on the "unfair employment" term which she argues creates an additional category of wrongdoing that CADA, but not Title VII and ADEA, covers. While the introductory sentence does refer to discriminatory or unfair employment practice, the following subsections provide a definition of unlawful actions that are common to both. The rest of the statute does not otherwise differentiate between a discriminatory practice and an unfair employment practice. In other words, an unfair employment practice is not separate from a discriminatory practice.

Next, citing Colo. Rev. Stat. § 24-34-402(e)(I), Plaintiff argues that CADA makes it unlawful for any person "to aid or abet" a discriminatory or unfair employment practice. (Plaintiff contends that Colo. Rev. Stat. § 24-34-402(e) also makes it lawful for any person "to protect" another's unlawful employment practice, but subsection (e) does not include that term within its

15

scope.) Regardless, even if CADA makes it unlawful "to aid, abet, or protect others' discriminatory employment practices," ECF 97 at 10, and even if that is an additional form of protection beyond what federal law provides, Plaintiff does not explain how Defendant could have aided, abetted, or protected its own alleged unlawful act. Nor does that particular provision concern Maikovich's failure to plead the required element of adverse action.

The same defects remain that render the Second Claim for Relief implausible.

### C. Marital Privilege

The Third Claim for Relief concerns Maikovich's interview by the Office of the State Court Administrator regarding Defendant's decision not to hire Plaintiff. Maikovich says that his participation was required, and because he was asked questions about Plaintiff (his wife), the inquiry unlawfully invaded marital confidentiality. The Court dismissed the claim because the state statute that creates the marital privilege, Colo. Rev. Stat. § 13-90-107, provides no private cause of action. Furthermore, the Court found immunity to protect Defendant from being sued under First Amendment or tort versions of the claim.

In her Motion, Plaintiff frames the issue in terms of Defendant "forcing [Maikovich] to divulge confidential marital communications under the threat of termination of his employment." ECF 86 at 7. However, that is not how Plaintiff pleads it: the proposed FAC only goes so far as to say that Defendant "required" Maikovich to be interviewed. ECF 86-1 at ¶¶ 74-81, 197-198. Requiring participation does not necessarily imply the making of a threat. Nevertheless, the reason why Maikovich felt compelled to answer questions about his wife does not affect the claim's plausibility. It is the lack of a private cause of action and Defendant's immunity that does.

Because Plaintiff still does not establish a cognizable claim, it would be futile to allow Maikovich to raise it again.

16

**CONCLUSION**

In support of her Motion, Plaintiff stresses certain points regarding claims that Maikovich seeks to re-assert, but she makes no substantive change to them. The same deficiencies that warranted their dismissal remain, and the proposed FAC does not overcome them. Whether construed as a request for reconsideration or to amend, the Motion provides no basis for reviving them.

Accordingly, the Motion [filed May 18, 2021; ECF 86] is **denied** to the extent Plaintiff seeks to re-add Maikovich as a plaintiff and seeks to re-assert his claims for relief. However, the Motion is **granted** to the extent Plaintiff seeks to add new allegations to the Factual Background section in support of the First Claim for Relief for race and age discrimination in hiring in violation of Title VII and CADA. Plaintiff shall file her First Amended Complaint (limited to those changes and without "redlining") on or before **August 2, 2021**.

Entered and dated at Denver, Colorado, this 26th day of July, 2021.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge